UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**ERICA ALEJANDRA GONZALEZ PORRAS**,                          :
                                                              :
                Plaintiff,            :
                                                              :    **MEMORANDUM DECISION AND**
      – against –                                     :    **ORDER**
                                                              :
                                                              :    23-CV-1195 (AMD) (TAM)
**IBX CONSTRUCTION**, **BOLEX GC CORP.**,                     :
**ADRIANO CASSIANO RAMOS VERDI**, and                         :
**BORIS BABAKHANOV**,                                         :
                                                              :
                Defendants.           :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff brings this action alleging that her former employers — IBX Construction and Adriano Cassiano Ramos Verdi (the "IBX defendants") — as well as Bolex GC Corp. and Boris Babakhanov (the "Bolex defendants") — violated her rights under Title VII of the Civil Rights Act ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Labor Law ("NYLL"). The Bolex defendants moved to dismiss the second amended complaint (ECF No. 29) for failure to state a claim upon which relief may be granted and for lack of supplemental jurisdiction over the state law claims (ECF No. 33).[1] For the reasons explained below, the motion is granted.

## BACKGROUND

      The following facts are drawn from the plaintiff's second amended complaint ("SAC"). (ECF No. 29.) On about December 13, 2019, the plaintiff visited 136-21 Hillside Avenue, Richmond Hill, New York (the "Hillside site"), a three-story commercial building that was under

---

[1] The IBX defendants have not answered the complaint or otherwise appeared in this action. (*See* ECF Order dated June 20, 2024.)

construction, to ask about potential job opportunities. (ECF No. 29 ¶¶ 1, 21.)[2] The defendant Bolex GC Corp. ("Bolex") was the general contractor for the Hillside site. (*Id.* ¶ 9.)[3] According to the plaintiff, Bolex entered into a contract with IBX Construction ("IBX") "in or around 2019" "to perform framing services on the Hillside Site." (*Id.* ¶ 10.)

Patricio Blacio, a laborer at the site, told the plaintiff that the "[d]efendants needed someone to help with framing" and put her in contact with Verdi, who owned IBX. (*Id.* ¶ 22.) The next day, the plaintiff interviewed with Verdi at the Hillside site. (*Id.* ¶ 24.) Verdi called the plaintiff about 30 minutes after the interview and offered her a job starting on December 16, 2019. (*Id.* ¶ 25). Verdi told the plaintiff that her starting salary would be $20 an hour, that she would be paid in cash, and that she would work with Blacio. (*Id.*)

The plaintiff started the job on December 16, 2019. (*Id.* ¶ 26.)[4] Her job was to "assist[] . . . Blacio with framing, including measuring, and cutting the metal used for framing." (*Id.* ¶ 29.) She worked every day "with about ten . . . to twenty . . . co-workers who performed framing services alongside [the d]efendants." (*Id.* ¶ 31.) She also "observed fifteen . . . to twenty . . . laborers" at the site every day "who, upon information and belief, were performing air conditioning and sheet rock work pursuant to contracts between . . . Bolex and other non-party subcontractors." (*Id.* ¶ 32.) Blacio introduced her to Abraham, a Bolex employee, who Blacio "and other employees at the Hillside [s]ite said was . . . Babakhanov's father." (*Id.* ¶ 30.)

Babakhanov "greeted" the plaintiff "and the other construction workers" every morning. (*Id.* ¶ 33.) The plaintiff and the other workers were "required to check[ ]in" with Abraham and

---

[2] The plaintiff "had some construction experience and was looking for a job to help support her family." (ECF No. 29 ¶ 21.)

[3] Babakhanov owns Bolex. (*Id.* ¶ 15.)

[4] The plaintiff "was not asked to fill out any employment or tax documents" when she started the job. (*Id.* ¶ 27.)

2

"sign an attendance sheet with their names and their individual OSHA numbers." (*Id.* ¶ 34.) "Upon information and belief," Abraham "presented the attendance sheets to . . . Verdi to determine [the p]laintiff's and her [c]o-workers['] pay." (*Id.* ¶ 35.) Verdi paid the plaintiff and her coworkers in cash "at the end of each pay-period." (*Id.* ¶ 36.)

Abraham "spent the entire day at the Hillside site." (*Id.* ¶ 37.) Babakhanov and Bolex's CEO Alex Gill "spent three to four hours each day" at the site "inspecting and monitoring the plaintiff['s] and the other construction workers' work and performance." (*Id.* ¶ 38.) Gill, Babakhanov, and Abraham "used a table set up in the entry way on the first floor of the building on the Hillsite [s]ite as a work space." (*Id.* ¶ 41.) They had "daily conversations with laborers and managers on the work site" and "frequent in-depth conversations with supervisors and managers," including Verdi. (*Id.*) Every day they also "inspect[ed] . . . the work being done by all subcontractors" and "monitor[ed] and review[ed] . . . the construction workers' time and attendance." (*Id.*) Both Bolex and IBX were "responsible for the safety of the employees and the legal compliance of the work done on the construction site." (*Id.* ¶ 18.)

### I.     Sexual Harassment Allegations

The plaintiff alleges that Verdi, the owner of IBX Construction, sexually harassed her, discriminated against her because she was a woman, and retaliated against her "for complaining about" Verdi's behavior. (*Id.* ¶ 158.) For example, starting in January 2020, Verdi ordered the plaintiff to drive with him (*see id.* ¶¶ 46–60, 88–94); during the rides, he "complimented" her (*id.* ¶ 49), offered her money to get him lunch (*id.* ¶ 57) and asked about her personal life (*id.* ¶ 59). After a few drives, Verdi repeatedly asked the plaintiff to be in a relationship with him, even after she told him that she was married and was not interested in a relationship. (*See, e.g., id.* ¶¶ 61–68, 73, 92, 96.) Verdi's repeated overtures "shocked and mortified" the plaintiff. (*Id.*

3

¶ 62.)  Verdi also touched the plaintiff against her will multiple times.  (*See id.* ¶ 74 (Verdi "had [the plaintiff] follow him up a set of stairs where other people could not see them;" "[h]alfway up the stairs he grabbed her and squeezed her so tight she could not move, as he tried to kiss her, but she moved her head."); *id.* ¶ 79 (Verdi "attempted to forcibly hug and kiss [the p]laintiff," and she "felt [him] push his penis against her leg."); *id.* ¶ 94 (Verdi "held [her] so tightly that she was unable to move" and he "tried to kiss [her];" she "moved her head to the side and pleaded for him to let her go."); *id.* ¶ 125 (Verdi "touch[ed] [her] legs through the holes of her jeans.")).  Verdi also called her offensive names.  (*Id.* ¶¶ 81, 120.)

At one point, Verdi announced to the workers at the Hillside site that the plaintiff "was now 'in charge' of everyone."  (*Id.* ¶ 69.)  After the announcement, his "harassment became more frequent and severe."  (*Id.* ¶ 72.)  The plaintiff alleges, "[u]pon information and belief," that Verdi "expected [her] to have sex with him as a reward for promoting her at work."  (*Id.* ¶ 84.)  Verdi "noticed" that the plaintiff "tried to avoid" him (*id.* ¶¶ 85, 87) and he "began to ignore [her] at the construction site and blocked her on his phone, even though she was responsible for sending him updates" (*id.* ¶ 87).  He knew that ignoring her and blocking her "would make it impossible" for her to do her job.  (*Id.* ¶ 104).

Later, Verdi also "stopped greeting" the plaintiff, "his tone toward her changed," and he "treated her very coldly."  (*Id.* ¶ 98.)  He "began to criticize [her] in front of her coworkers by telling her that she was not doing a good job."  (*Id.* ¶ 99.)  He tried to lower the hourly wage to $15 for "anyone without proper equipment" because he knew that she "had an issue with her drill;" that change was never implemented.  (*Id.* ¶¶ 100–01.)  The plaintiff was not paid for the two days that she took off to get her scaffolding license, even though "the defendants' policy and

4

practices" required her to be paid.  (*Id.* ¶ 97.)  She alleges upon information and belief that she was not paid "as punishment for resisting . . . Verdi's advances." (*Id.*)

Verdi demoted the plaintiff on February 20, 2020 (*id.* ¶ 106); he told her it was because "she was not 'tough' enough to manage everyone and that she was not doing a good job" (*id.* ¶ 109).  He also told her that he demoted her because Babakhanov complained "about a ladder that was left behind" (*id.* ¶ 115); the plaintiff alleges that Verdi did not "investigate the facts behind [Babakhanov's] complaint" or previously "register any concern with [her] work performance" (*id.* ¶ 116).

On about March 16, 2020, the plaintiff told Verdi that "she was upset by his constant harassment and begged him to please stop harassing her." (*Id.* ¶ 128; *see also id.* ¶ 129.)  The same day, Verdi told Nazario Reyes, one of the plaintiff's coworkers, to tell the plaintiff that "she was not to ever talk to or confront [Verdi] again, or else she would be fired." (*Id.* ¶¶ 131–32.)

On about March 20, 2020, Reyes told the plaintiff that the Hillside site was closing because of COVID-19, but that she could come back to work in two weeks. (*Id.* ¶ 135.)  At some point after that, the plaintiff's coworkers "were called back to work, but she was not." (*Id.* ¶ 137.)

The plaintiff maintains that the Bolex defendants were aware of Verdi's conduct and "condoned and endorsed" it.  (*Id.* ¶¶ 18, 97, 118, 157.)  "Upon information and belief," Babakhanov, Gill, and Abraham "knew that [] Verdi demoted [the p]laintiff because she refused his advances, and [that he] put in her place an employee who accepted those advances" (*id.* ¶ 110); the plaintiff cites as support for this conclusion the Bolex defendants' "steady, daily presence at the construction site," and the allegation that the Bolex defendants "regularly

5

conferred with . . . Verdi and his employees, and monitored their work" (*id.* ¶ 111). According to the plaintiff, Verdi used Babakhanov's complaint about the ladder to justify demoting the plaintiff because Babakhanov "was aware of," "condoned[,] and endorsed" the demotion and Verdi's "intention to fire the plaintiff." (*Id.* ¶ 118.) The plaintiff alleges that she was not paid for the two days off work "with the knowledge of . . . Babakhanov." (*Id.* ¶ 97.) She also alleges that the Bolex defendants knew that she complained about the discrimination and either ignored "and/or aided and abetted" IBX and Verdi's "rejection of her complaints." (*Id.* ¶ 157.)

## II.    Wage Violation Allegations

The plaintiff alleges that she was paid less than her male coworkers "who performed equal or substantially similar work requiring equal or substantially similar skill and effort under similar working conditions." (*Id.* ¶ 138.) All employees "who worked on framing" "performed the same tasks." (*Id.* ¶ 139.) The defendants hid "the employees' pay rates by delivering their pay by hand in sealed envelopes for each pay period." (*Id.*)

Throughout her employment, from December 2019 to March 20, 2020, the plaintiff earned $20.00 per hour. (*Id.* ¶ 141.) She worked five days a week for nine hours a day with a 30-minute lunch break, and "at least every other week" she worked on Saturdays; in total, she worked about 42.5 to 50.5 hours or more per week. (*Id.* ¶ 142.) She did not receive time and a half pay for any overtime hours. (*Id.* ¶ 143.)

The defendants did not post "notices of the minimum wage and overtime wage requirements in a conspicuous place" or keep payroll records. (*Id.* ¶¶ 144–45.)

## III.    Procedural History

On December 23, 2020, the plaintiff filed a charge of discrimination against IBX and Bolex; on July 5, 2022, the EEOC issued her a right to sue notice. (*Id.* ¶ 20.) On September 27,

2022, the plaintiff filed a summons with notice against the defendants, which informed them that she was bringing an action with claims of harassment and discrimination under Title VII, unequal pay under the Equal Pay Act, and unpaid overtime under the Fair Labor Standards Act. (ECF No. 1 ¶ 1.) On January 23, 2023, the Bolex defendants accepted service, and on February 14, 2023, they removed the action to this Court on the basis of federal question jurisdiction. (*Id.* ¶¶ 2–3.) The plaintiff filed an amended complaint on August 18, 2023. (ECF No. 29.) She seeks an order declaring that the defendants violated Title VII, the NYSHRL, the NYCHRL, and the NYLL; "[a]warding overtime, compensatory, punitive and liquidated damages," prejudgment and post-judgment interest, costs, disbursements, and fees; and "[g]ranting such other and further relief as this Court may deem just and proper under the circumstances." (*Id.* at 27.)

On September 8, 2023, the Bolex defendants moved to dismiss the SAC. (ECF No. 33.) The plaintiff opposes. (ECF No. 37-1.)

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and alterations omitted).

## DISCUSSION

I. **Title VII Claims**

The plaintiff brings Title VII discrimination, sexual harassment, and retaliation claims against Bolex on the theory that Bolex "condoned and endorsed" Verdi's discriminatory, harassing, and retaliatory conduct and was aware of but deliberately ignored her complaints about him. (ECF No. 29 ¶¶ 18, 157.)[5] The Bolex defendants argue that the claims must be dismissed because the plaintiff does not sufficiently allege that Title VII applies to Bolex, that Bolex was her employer, or that Bolex was aware of or participated in the alleged misconduct. (ECF No. 34 at 7–14.)

Title VII applies only to "employers" — "person[s] engaged in an industry affecting commerce" — that have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year . . . ." 42 U.S.C. § 2000e(b). "[T]he threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief" under that statute. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006). Accordingly, to survive a motion to dismiss, a plaintiff must allege facts that "plausibly support . . . an allegation" that her employer has at least 15 employees. *Eyeghe v. Thierry*, No. 14-CV-1914, 2014 U.S. Dist. LEXIS 147071, at *2 (S.D.N.Y. Oct. 15, 2014) (dismissing Title VII claim where the plaintiff did not allege that the employer had 15 or more employees).

The plaintiff does not allege that Bolex employed 15 employees at any given time. She alleges that she "worked with about ten (10) to twenty (20) co-workers who performed framing services alongside [the d]efendants" and that every day at the Hillside site she "observed fifteen (15) to twenty (20) laborers, who, upon information and belief, were performing air conditioning

---

[5] The plaintiff does not bring Title VII claims against Babakhanov.

and sheet rock work pursuant to contracts between . . . Bolex and other non-party subcontractors." (ECF No. 29 ¶¶ 31–32.) These allegations are too vague to support an inference that Bolex employed any of these workers.

Nor does the complaint sufficiently allege that the workers were jointly employed by Bolex and IBX, such that they "can be aggregated for Title VII purposes" to reach the 15-employee threshold. (ECF No. 37-1 at 13.) Under the joint employer doctrine, "more than one entity can be considered the employer of a given individual for certain purposes if the entities 'handle certain aspects of their employer-employee relationship jointly.'" *Kuhnmuench v. Phenix Pierre, LLC*, No. 16-CV-9162, 2018 U.S. Dist. LEXIS 43085, at *8 (S.D.N.Y. Mar. 15, 2018) (quoting *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005)).[6] To evaluate "whether a joint employer relationship exists, courts consider 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" *Lotfi v. Star Career Acad.*, No. 15-CV-2215, 2017 U.S. Dist. LEXIS 59125, at *13 (S.D.N.Y. Mar. 23, 2017) (quoting *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)). Courts also look to "the control that [the employers] exercise over the employee[s] in setting the terms and conditions of the employee's work." *Id.* (quoting *Sosa v. Medstaff, Inc.*, No. 12-CV-8926, 2013 U.S. Dist. LEXIS 175278, at *8 (S.D.N.Y. Dec. 13, 2013)). The "requisite commonalit[ies]" must be present with respect to every employee to be aggregated. *Kuhnmuench*, 2018 U.S. Dist. LEXIS 43085, at *9 (citing *Arculeo*, 425 F.3d at 199). Moreover, "it does not follow that all the employees of both employers are part of an integrated entity encompassing both," unless "the circumstances justify

---

[6] "Although the Second Circuit has never held directly that the joint employer doctrine may be used to aggregate the employees of multiple entities for purposes of the 15-employee Title VII threshold, that court has articulated the analytical principles that would apply in such circumstances," and district courts in the circuit have applied those principles in this context. *Kuhnmuench*, 2018 U.S. Dist. LEXIS 43085, at *8–9 (citing *Arculeo*, 425 F.3d at 199).

9

the conclusion that all the employees of one are jointly employed by the other." *Arculeo*, 425 F.3d at 199.

The complaint's allegations about Bolex's management practices and relationship with IBX include (1) that Babakhanov greeted the workers every morning when they arrived at the Hillside site (ECF No. 29 ¶ 33); (2) that the workers were "required to check[ ]in" with Abraham and "sign an attendance sheet with their names and individual OSHA numbers" (*id.* ¶ 34); (3) that "upon information and belief" Abraham gave the attendance sheets to Verdi, who "determine[d] [the workers'] pay" (*id.* ¶ 35); (4) that Abraham "spent the entire day at the Hillside [s]ite" (*id.* ¶ 37) and Babakhanov and Gill were there for three to four hours each day, "inspecting and monitoring the [workers'] work and performance" (*id.* ¶ 38); and (5) that the three men set up a table "in the entry way on the first floor of the building . . . as a work space," from which they spoke daily with "laborers and managers on the work site," had "frequent in-depth conversations with supervisors and managers," including Verdi, "inspect[ed] . . . all subcontractor[s']" work, and "monitor[ed] and review[ed] . . . the construction workers' time and attendance" (*id.* ¶ 41).

None of these allegations establishes that Bolex had control over setting the terms and conditions of the workers' employment. At most, the complaint suggests that Bolex, as the general contractor, supervised the subcontractors' employees' work at the Hillside site (*id.* ¶ 41) and, with IBX, was "responsible for the safety of the employees and the legal compliance of the work done on the construction site" (*id.* ¶ 18). However, the plaintiff does not allege that Bolex was involved in the workers' "hiring, firing, discipline, pay, insurance, [or] records." *Lotfi*, 2017 U.S. Dist. LEXIS 59125, at *13. Indeed, there are few allegations about the terms and conditions of the plaintiff's coworkers' jobs: the plaintiff alleges only that Abraham greeted the

10

workers every morning, they had to sign the attendance sheet every day, and that they "were paid in cash by . . . Verdi at the end of each pay-period." (ECF No. 29 ¶¶ 33, 34, 36.) These allegations do not establish that Bolex was the "actual decisionmaker" on employment matters, or that it controlled the "terms and conditions" of her work. *Lotfi*, U.S. Dist. LEXIS 59125, at *21. Indeed, the complaint has none of the detail that courts have found sufficient to state a joint employer claim. *See, e.g.*, *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 518–19 (S.D.N.Y. 2016) (finding joint employer where the plaintiff alleged that the chairman of the moving defendant reviewed performance evaluations with employees, created policies on employee duties, visited the joint employer's offices twice a month, regularly met with the plaintiff individually, and notified the plaintiff that he should retire and search for a replacement).[7] Accordingly, the plaintiff does not state Title VII claims, and the claims must be dismissed.

The Title VII claims must be dismissed for the additional reason that the plaintiff does not allege that Bolex was her employer. Just as the allegations do not show that Bolex and IBX were joint employers for purposes of aggregating the number of employees, they do not show that they were the plaintiff's joint employers. Instead, the complaint suggests that IBX had full control over the terms and conditions of her employment. Verdi interviewed her for the job, hired her, told her the starting salary and how she would be paid, and explained to her that she would be working with Blacio. (ECF No. 29 ¶¶ 24–25.) Verdi used the attendance sheets "to determine [her] pay," paid her in cash at the end of every pay period, promoted her to the

---

[7] The plaintiff also does not sufficiently allege that Bolex is an "employer" pursuant to Title VII because the allegations do not support an inference that the workers worked "each working day in each of twenty or more calendar weeks in the current or preceding year . . . ." 42 U.S.C. § 2000e(b). The plaintiff worked at the Hillside site for approximately four months — fewer than 20 weeks — so her observations about the number of workers on site do not suffice to state that element of the claim. (*See* ECF No. 29 ¶¶ 26, 135–37, 140.)

11

supervisor position, demoted her, and threatened to fire her.  (*Id.* ¶¶ 35–36, 69–70, 105, 132.)

That Abraham kept the attendance sheets does not demonstrate "control" over the plaintiff's job.

(*Id.* ¶¶ 34–35.)  The allegation that Verdi told the plaintiff that he was demoting her because

Babakhanov complained "about a ladder that was left behind" does not suffice either, because

the plaintiff does not allege that Babakhanov directed Verdi to demote or discipline her — or

even knew that the plaintiff was responsible for the ladder.  (*Id.* ¶¶ 115–16.)[8]

      Even if the plaintiff alleged that Title VII applied to Bolex and that Bolex and IBX were

the plaintiff's joint employers, she has not pled any facts to establish that Bolex should be held

liable for Verdi's allegedly discriminatory and hostile conduct.  *Lima v. Addeco*, 634 F. Supp. 2d

394, 400 (S.D.N.Y. 2009) ("Even where two companies are deemed a joint employer, . . . it is

not necessarily the case that both are liable for discriminatory conduct in violation of Title

VII.").  First, Verdi "is the only defendant who the plaintiff claims made any discriminatory

comments," and she does not allege that she had any meaningful contact beyond morning check-

ins, "much less a relationship, with any of the [Bolex] defendants."  *Sosa*, 2013 U.S. Dist.

LEXIS 175278, at *10.  Second, the plaintiff does not allege that Bolex was "in a position to

---

[8] The plaintiff asserts alternatively that Bolex and IBX were a "single employer."  (ECF No. 29 ¶ 18.)  "A single employer relationship exists when 'two nominally separate entities are actually part of a single integrated enterprise.'"  *Lotfi v. Star Career Acad.*, No. 15-CV-2215, 2017 U.S. Dist. LEXIS 59125, at *12 (S.D.N.Y. Mar. 23, 2017) (quoting *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)).  To determine whether a single employer relationship exists, courts look to four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control," *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2d Cir. 1995) (citation omitted), with the second factor being the "most important," *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014).  Although the question of "[w]hether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact" "not suited to resolution on a motion to dismiss," the plaintiff still must "contain sufficient 'factual content' for the Court to infer that [she] can plausibly make out the elements of the single employer doctrine."  *Ayala v. Metro One Sec. Sys., Inc.*, No. 11-CV-233, 2011 U.S. Dist. LEXIS 42325, at *16, *19 (E.D.N.Y. Apr. 19, 2011) (citations omitted).  The plaintiff does not do so; her few allegations about the Bolex-IBX relationship are vague, do not support any of the relevant factors, or constitute "legal conclusions couched as a factual allegation."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

control" what Verdi did. *Id.* The plaintiff does not allege that Verdi worked for Bolex; she alleges only that he owned IBX. (ECF No. 29 ¶ 12.) Finally, the plaintiff's conclusory allegations that Bolex knew about and sanctioned Verdi's conduct are premised only on her claim that Bolex and IBX are either single or joint employers. (ECF No. 29 ¶ 18.) These allegations are not sufficient to hold Bolex liable for Verdi's actions, or for Bolex's "fail[ure] to take corrective measures within [their] control." *Sosa*, 2013 U.S. Dist. LEXIS 175278, at *10–11 (quoting *Lima*, 634 F. Supp. 2d at 402).

## II. State Law Claims

The plaintiff brings claims against Bolex and Babakhanov for discrimination, sexual harassment, and retaliation under the NYSHRL and the NYCHRL, and for unequal pay, unpaid overtime wages, and violations of notice, record keeping, and wage statement requirements under the NYLL. (ECF No. 29 at 22–27.)

Under 28 U.S.C. § 1367(c)(3), a "district court[] may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." *See, e.g.*, *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (Where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008))). The Court may decline jurisdiction "[e]ven where federal claims against other defendants remain." *Mhina v. Van Doren*, No. 15-CV-327, 2016 U.S. Dist. LEXIS 131146, at *10 (N.D.N.Y. Sept. 26, 2016); *see, e.g.*, *Melvin v. Cnty. of Westchester*, No. 14-CV-2995, 2016 U.S. Dist. LEXIS 41120, at *63–65 (S.D.N.Y. Mar. 29, 2016); *Germano v. Dzurenda*, No. 09-CV-1316, 2011 U.S. Dist. LEXIS 32078, at *53–54 (D. Conn. Mar. 28, 2011). The Court's decision whether to exercise jurisdiction is guided by the "traditional 'values of judicial economy, convenience, fairness, and

13

comity.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

The Court declines to retain jurisdiction over the state law claims against the Bolex defendants because the federal claims against them have been dismissed. The plaintiff does not "provide a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed." *Leake v. Garden City Union Free Sch. Dist. Bd. of Educ.*, No. 23-CV-4243, 2024 U.S. Dist. LEXIS 115773, at *13–14 (E.D.N.Y. July 1, 2024). Rather, her argument for the Court's supplemental jurisdiction relies on the Title VII claims against Bolex surviving the motion to dismiss, which they do not. (ECF No. 37-1 at 17–20.)

The fact that the plaintiff has federal claims against the IBX defendants does not mean that the Court must retain jurisdiction over her claims against the Bolex defendants, especially because allegations against Bolex are sparse, and because of the predominance of the state law claims "in terms of proof, of the scope of the issues raised, [and] of the comprehensiveness of the remedy sought." *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 853 (S.D.N.Y. 2015) (quoting *Dedalus Found. v. Banach*, No. 09-CV-2842, 2009 U.S. Dist. LEXIS 98606, at *15 (S.D.N.Y. Oct. 16, 2009)).

Accordingly, the Court declines to exercise supplemental jurisdiction over the plaintiffs' NYSHRL, NYCHRL, and NYLL claims against the Bolex defendants, who are thus dismissed from this action.

### III.   Leave to Amend

The plaintiff filed the original complaint on March 23, 2023. (ECF No. 7.) On May 11, 2023, she filed an amended complaint. (ECF No. 20.) She filed a second amended complaint on

August 18, 2023 (ECF No. 29), after a June 28, 2023 pre-motion conference. She seeks leave to amend a third time "to correct any deficiencies." (ECF No. 37-1 at 20.) The request is denied.

The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022). "But a court need not always allow a party to replead simply because it asked," particularly when "the request gives no clue as to how the complaint's defects would be cured." *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

The plaintiff "provides no explanation about how she intends to amend further" the SAC to provide additional facts sufficient to state a claim, nor has she "attempted to explain what information she has learned since the filing of her [opposition] that she would include in a potential [third] amendment." *Pierre v. N.Y.C. Fire Dep't*, No. 22-CV-7425, 2024 U.S. Dist. LEXIS 17160, at *11–12 (E.D.N.Y. Jan. 31, 2024) (citations omitted). She also had two previous opportunities to amend but has not cured the deficiencies discussed in this order. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin*, 2016 U.S. Dist. LEXIS 41120, at *80 n.19 (applying same).

Accordingly, the Court denies leave to amend. *See, e.g.*, *Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of leave to amend where the plaintiffs "sought leave to amend in a footnote at the end of their opposition to [the] motion to dismiss" and "included no proposed amendments"); *Harris v. Mondelez Glob. LLC*, No. 19-CV-2249, 2020 U.S. Dist. LEXIS 133715, at *8 (E.D.N.Y. July 28, 2020) (denying leave to amend because the plaintiff "offer[ed] no explanation of what new allegations might be added"); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 310 (S.D.N.Y. 2023) (denying leave to amend

where the plaintiff amended the complaint once after a pre-motion letter from the defendant "stating all of the grounds on which it would move to dismiss" and "ha[d] failed to otherwise suggest that she is 'in possession of facts that would cure the deficiencies that [the d]efendants highlighted in the instant motion and that the [c]ourt highlighted in this [o]pinion'" (quoting *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 U.S. Dist. LEXIS 38823, at *26 (S.D.N.Y. Mar. 4, 2022))).

## CONCLUSION

For these reasons, the Bolex defendants' motion to dismiss is granted. The Court dismisses the Title VII claims with prejudice "because [the p]laintiff as already had two bites at the apple[,] and they have proven fruitless." *Treppel v. Biovail Corp.*, No. 03-CV-3002, 2005 U.S. Dist. LEXIS 18511, at *37 (S.D.N.Y. Aug. 30, 2005). The state law claims are dismissed without prejudice. *Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction, 'Article III [of the U.S. Constitution] deprives federal courts of the power to dismiss [the] case with prejudice.'" (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999))). The Bolex defendants are therefore dismissed from this action. The plaintiff's request for leave to amend is denied.

**SO ORDERED.**

                    s/Ann M. Donnelly

                    ANN M. DONNELLY
                    United States District Judge

Dated: Brooklyn, New York
    August 15, 2024